**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION**

PATRICIA PACE                                                              PLAINITFF

VS.                                         CIVIL ACTION NO. 3:17-cv-9-CWR-LRA

MISSISSIPPI BAPTIST HEALTH SYSTEMS, INC.                       DEFENDANT

---

**MEMORANDUM BRIEF OF
MISSISSISSIPPI BAPTIST HEALTH SYSTEMS, INC.
IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

---

Mississippi Baptist Health Systems, Inc. ("Baptist") hereby submits its memorandum brief in support of its motion for summary judgment:

## I.     INTRODUCTION

Plaintiff, Patricia Pace, lost her job at Baptist because she did not perform her duties as a Registered Nurse\Case Manager ("CM") at the level required by Baptist.  Plaintiff cannot establish that she was able to perform the essential requirements of her CM job with or without a reasonable accommodation.

The only accommodation claimed by Plaintiff in this action is that she should have been allowed to perform utilization review duties.  However, this would have not constituted a "reasonable" accommodation.  It would have required that Baptist waive its requirement that jobs consisting of solely utilization review functions be performed only by licensed practical nurses.  No position consisting strictly of utilization review functions is performed by a CM or registered nurse at Baptist.  It follows that no such position existed or was ever vacant or open for Plaintiff.  Baptist was not required by ADA to create such a position for Plaintiff, or waive its

requirement that jobs comprised solely of utilization review duties be performed only by licensed practical nurses.

The only legal claims asserted in Plaintiff's complaint are for alleged disability discrimination and failure to provide reasonable accommodation under ADA.  No claim for alleged disability-based harassment is stated.  Even if it were, Plaintiff has no evidence sufficient to sustain the heavy burden of demonstrating actionable harassment.  In any event, Plaintiff unreasonably failed to take advantage of Baptist's reasonable complaint procedures or to otherwise avoid the alleged harm of which she complains.  Plaintiff concedes she never made any complaint concerning any matter under Baptist's published discrimination and harassment complaint procedures.

For all of the foregoing reasons, Baptist respectfully submits that it is entitled to summary judgment.

## II.  BACKGROUND

Plaintiff became employed by Baptist as a CM in the Emergency Department ("ED") at Mississippi Baptist Medical Center (owned and operated by Baptist) in January of 2013. Plaintiff's depo. (Exhibit A to motion) at 55, 57.  To work as a CM, an employee must be a licensed registered nurse.  Affidavit of Kelly Johnston (Exhibit B to Motion), at ¶ 2.  In this job, Plaintiff's duties were, among others: identification of discharge needs of patients presenting to the ED; assisting patients with transportation needs upon leaving the ED for transportation home, to nursing homes, hospice facilities, or otherwise; communication with nursing homes, hospice facilities, and Medicaid for this purpose; communicating with physicians and other ED workers concerning whether patients met the requisite criteria for admission to the ED; completing a paper admission and discharge assessment for each patient and charting in the medical record

matters such as whether patients had caregivers at home, needed assistive devices, necessary transportation needs, home health information and needs, and related information; transferring information on the written admission and discharge assessment to the hospital's computer system; involving social workers for abuse victims to determine whether the patients should be admitted to the emergency room or transferred to another facility, and working with physicians in this regard; communication and interaction with the Radiology Department, lab personnel, other nurses, the emergency room manager and emergency room assistant, emergency room clerks, and other emergency room personnel, to facilitate timely completion of all of the above functions.  Plaintiff's depo. at 58-59, 60-65.  Johnston Aff. at ¶ 3.  One of the primary goals of the case management function in the emergency room is to evaluate and implement the above processes in a manner which prevents emergency room patients from having to be admitted to the hospital itself, if possible.  Johnston Aff. at ¶ 3.  Plaintiff received specific CM training (relative to her duties as a CM in the Emergency Department) on at least two occasions – at the outset of her employment in January of 2013 and again in October of 2014.  Plaintiff's depo. at 72-74.  Plaintiff's job duties in the ED were the same from the time she was hired in January 2013 until she was transferred from the ED at the end of June 2015.  Plaintiff's depo. at 66-67.

In early 2014, Baptist implemented a medical records computer program known as Paragon.  Plaintiff's depo. at 66, 68-72.  Once Paragon was implemented, it became part of Plaintiff's job to accurately and timely enter various medical data and observations made by her into the Paragon system.  *Id.*  Prior to implementation of Paragon, Plaintiff received training sessions from Baptist demonstrating proper use of Paragon on December 17, 2013; December 20, 2013; December 24, 2013; December 31, 2013; and February 27, 2014.  Plaintiff's depo. at 68-72 and Exhibit 5 (page 4).  *See also* Johnston Aff. ¶ 4 (Plaintiff was responsible for entry of

3

various data into the Paragon computer system as a part of the medical record of Baptist).

In or about September 2014, Kelly Johnston, Director of Case Management, became Plaintiff's direct supervisor. Johnston Aff. ¶ 1, 2, 6; Plaintiff's depo. at 74-75, 80-81. Plaintiff concedes Johnston was responsible for ensuring that Plaintiff performed her job duties properly, and that if Johnston determined Plaintiff was not performing her job duties adequately, it was Johnston's obligation to work with Plaintiff to correct her performance deficiencies. Plaintiff's depo. at 80-81.

Shortly after becoming Plaintiff's supervisor, Johnston observed that Plaintiff was not recording in the medical record (Paragon) certain vital actions and observations relative to her job duties as a CM, including either not performing or not charting required CM activities as detailed above. Johnston Aff. at ¶ 6. Johnston also began receiving complaints (as detailed) below) from various individuals working in the Emergency Department about Plaintiff's job performance. Johnston Aff. at ¶ 6. Johnston believed that additional CM training would be beneficial for Plaintiff, so she (Johnston) organized and attended with Plaintiff a CM training session in October 2014. Plaintiff depo. at 72-74; Johnston Aff. at ¶ 7. This training was directed specifically to case management activities in the emergency room setting. *Id.* at ¶ 7.

Regardless of this training, Johnston continued to receive complaints from various sources in the ED and elsewhere in the hospital about Plaintiff's job performance. Johnston Aff. ¶ 8. These complaints were made to Johnston over time beginning in the fall of 2014 and continuing in the first half of 2015. Johnston Aff. ¶ 8.[1]

---

[1] For example, William Stoltzfus, a registered nurse serving as the Unit Education Coordinator for the ED, personally observed Plaintiff's failure or refusal to perform her job duties on multiple occasions. Affidavit of William Stoltzfus (Exhibit D to motion) at ¶ 3. Mr. Stoltzfus encountered various instances in which Plaintiff failed or declined to handle coordination of home health inquiries for patients, resolution of transportation issues for

As she received the continuum of complaints, Johnston determined Plaintiff was still not making required documentation of discharge assessment plans for ED patients in Paragon concerning special patient needs for transportation, home health services, durable medical equipment, or other solutions necessary to prevent their admission to the hospital.  Johnston Aff. at ¶ 9.  As a result of Plaintiff's ongoing poor job performance, Johnston decided (in May 2015) that Plaintiff should be placed on a written Performance Improvement Plan (PIP).  Johnston met with Plaintiff on May 14, 2015 to review the PIP with Plaintiff.  Plaintiff's depo. at 92-94 and Ex. 10; Johnston Aff. at ¶ 8.  Both Plaintiff and Johnston signed the PIP on that date.  Plaintiff's depo. at 92-94 and Ex. 10.[2]  The PIP noted Plaintiff's specific performance problems, necessary

---

patients, interaction with Medicaid to procure payment for such transportation services, or to procure durable medical equipment for patients (for example: oxygen bottles, walkers, wheel chairs, and other such implements).  *Id.* at ¶ 5.  Plaintiff would simply remain seated at her computer desk looking at her computer as opposed to proactively performing her job.  *Id.*  According to Stoltzfus, there were also occasions when Plaintiff would not answer calls or pages for assistance, and would remain at her desk and not answer the call.  *Id.* at ¶ 5.  On more than one occasion, Stoltzfus personally requested that Plaintiff assist him by completing necessary Medicaid forms to obtain payment for ambulance rides for patients, conducting necessary interactions to arrange payment by Medicaid, and contacting the ambulance company to procure the transportation.  *Id.* at ¶ 6.  Plaintiff would respond that Stoltzfus could do the work himself.  *Id.* at ¶ 6.  These episodes were repetitive, and Stoltzfus reported them to Johnston as Plaintiff's supervisor.  *Id.* at ¶ 7.

Robert Coleman, Director of Emergency Services (now Assistant Vice President of Mississippi Baptist Medical Center), received complaints from emergency room physicians concerning Plaintiff's performance.  Doctors Cas Heath and Chris Jackson both reported to Mr. Coleman instances in which they had patients who needed to be processed out of the ED after completion of treatment, but that Plaintiff provided them with little or no assistance.  Affidavit of Robert Coleman (Exhibit C to motion) ¶ 3.  These doctors advised Coleman that Plaintiff did not help them, and instead, sat at her computer and failed to do her job.  *Id.* at ¶ 3.  Coleman reported these complaints to Johnston.  *Id.* at ¶ 5.

Emergency Room Manager (now Emergency Room Director), Bert McPhail, encountered similar instances of non-performance by Plaintiff.  Affidavit of Bert McPhail (Exhibit E to motion) at ¶ 4.  Mr. McPhail personally observed Plaintiff on multiple occasions sitting and staring at her computer terminal and failing to assist patients, physicians, and other emergency room staff.  *Id.* at ¶ 4.  McPhail also reported these instances to Johnston as Plaintiff's supervisor.  *Id.* at ¶ 4.

Chief Nursing Officer, Bobbie Ware, received the same types of complaints as did Robert Coleman from physicians concerning Plaintiff's performance of her job duties.  Affidavit of Bobbie Ware (Exhibit F to motion) at ¶ 4.  Ms. Ware reported these physician complaints about Plaintiff to Johnston's supervisor, Dawn Davis, with a request that the matter be addressed by Johnston with Ms. Pace.  *Id.* at ¶ 4.

[2] As indicated on Exhibit 10 to Plaintiff's deposition, the purpose of a PIP at Baptist is to "Provide a common understanding between the employee and his/her supervisor regarding performance for employees that receive a <u>Needs Development</u> performance rating or [have] a job requirement/goal that requires targeted performance improvement.  Improvements must be demonstrated by the employee to insure continued success in his/her current

corrective actions, target completion dates, and that weekly follow-up meetings to determine Plaintiff's progress would be conducted.[3]  Johnston then began weekly follow-up meetings with Plaintiff to determine her progress.  Plaintiff's depo. at 95 and Ex. 10; Johnston Aff. at ¶ 9.

Johnston's notes of her PIP follow-up meetings with Plaintiff are shown on the second page of Exhibit 10 to Plaintiff's deposition.  Plaintiff's depo., Ex. 10; Johnston Aff. at ¶ 9 and Exhibit 1.  They reflect that on May 26, 2015 and June 1, 2015, Johnston met with Plaintiff to discuss her progress under the PIP.  *Id.*  Johnston noted that Plaintiff had improved in documenting discharge assessments in the medical record, but that Plaintiff continued to exhibit insufficient performance in proactively interacting with patients, physicians, and ED staff to determine ways to prevent hospital admissions based on the patient's specific needs, and in failing to document those efforts in the Paragon system; and that Plaintiff stated she was uncomfortable approaching the emergency room staff to do her job.  Plaintiff's depo. at 100-103 and Ex. 10; Johnston Aff. at ¶ 9; Exhibit J, response to interrogatory 11.  According to Johnston, Plaintiff indicated that she was not clear on how to go about these tasks, or about how to document them in Paragon.  *Id.*  On June 11, 2015, Johnston observed that Plaintiff did not know how to document in Paragon her efforts to set up a patient for home health services.  Johnston Aff. at ¶ 10; Plaintiff's depo. at 103.

On June 18, 2015, Johnston again discussed with Plaintiff the requirements of being a CM in the ED, and generally.  Johnston Aff. at ¶ 11.  Because Johnston understood that Plaintiff had previously expressed difficulty in working in Paragon and proactively interacting with

---

job and at Baptist Health Systems.  The *Performance Improvement Plan* should document target performance improvement needs.  Failure to reach a satisfactory performance level during the performance improvement period (based on the "target completion" date/s noted in the table) could lead to additional corrective action up to and including termination."  Plaintiff's depo., Ex. 10.

[3] The specific performance problems and corrective actions needed in Plaintiff's PIP are set forth in Exhibit 10 to Plaintiff's deposition and will not be recited here.  Plaintiff's depo., Ex. 10.

physicians and staff in the emergency room, Johnston broached the idea of moving Plaintiff out

of the ED.  *Id.*  Plaintiff responded "I think we both know I'm not cut out for case management,

but what else can I do?"  Johnston Aff. at ¶ 11; Plaintiff's depo. at 103-104.  Johnston mentioned

the possible option of Plaintiff's learning to do utilization review instead of case management,

which would involve more computer work and communications with insurance companies and

less patient and physician interaction as required for case management.  Johnston Aff. at ¶ 11;

Plaintiff's depo. at 104 and Ex. 10 (p. 2); Exhibit J, response to interrogatory No. 9.  Plaintiff

indicated she would be willing to try utilization review.  Plaintiff's depo. at 103-104 and Ex. 10

(p. 2).  Johnston told Plaintiff that she would check on this possibility and get back in touch with

Plaintiff.  Johnston Aff. at ¶ 11.[4]

Johnston then spoke with Bobbie Ware about the possibility of allowing Plaintiff to do

utilization review instead of case management.  Johnston Aff. at ¶ 12.  However, Johnston was

told by Ware that under established hospital practice, only licensed practical nurses could

perform strictly utilization review duties.  Johnston Aff. at ¶ 12; Affidavit of Bobbie Ware

(Exhibit F to motion) at ¶ 2.  Ware advised that CMs were expected to perform registered

nursing (i.e., case management) functions for patients.  Ware Aff. at ¶ 2.

On June 29, 2015, Johnston met with Plaintiff and explained that Plaintiff could not

perform solely utilization review duties for the reasons explained by Bobbie Ware.  Johnston

Aff. at ¶ 12;  Plaintiff's depo. at 109-110 and Ex. 10 (p. 2).  Johnston apologized for the

misunderstanding, and inquired about what else Plaintiff would like to do.  Johnston Aff. at ¶ 12.

Johnston advised that the only alternative to remaining in the ED would be to perform case

---

[4] Plaintiff desired to move out of the ED and into utilization review work because it "did not involve patient and physician interaction and was therefore less intense than case management."  Exhibit J, response to interrogatory No. 11.

management on the floor of the hospital.  Plaintiff's depo. at 112; Johnston Aff. at ¶ 12.  Plaintiff

agreed to leave the ED and become a CM on a floor in the main hospital.  Johnston Aff. at ¶ 12.

Johnston agreed to this and advised Plaintiff that she should plan to start case management work

on the floor on July 6, 2015.   Plaintiff's depo. at Ex. 10 (p. 2); Johnston Aff. at ¶ 12.

Johnston assigned Plaintiff to work with a preceptor (i.e., trainer), Gloria Thompson, who

was to provide orientation training to Plaintiff for case management work on the floor.  Johnston

Aff. at ¶ 13; Plaintiff Depo. at 116.  Ms. Thompson was an experienced registered nurse who

performed case management duties on the fifth floor of the hospital in the surgical urology unit.

Johnston Aff. at ¶ 13; Affidavit of Gloria Thompson (Exhibit H to motion) at ¶ 3.  Case

management activities on a hospital floor involve many of the same duties as in the ED except

that such duties (on the floor) were directed toward the goal of processing patients out of the

main hospital upon discharge.  Johnston Aff. at ¶ 13; Thompson Aff. at ¶ 4.  A CM on the floor

was likewise obligated to regularly interact with physicians, other nurses, and patients about

post-discharge placement issues, home health assistance, ordering and facilitation of durable

medical equipment, Medicaid and insurance issues, and other such activities.  Johnston Aff. at ¶

13; Thompson Aff. at ¶¶ 4-5.  The same medical record-keeping obligations in Paragon and other

systems also applied, except that CMs on the floor were also required to be proficient in

transferring information contained in Paragon to another system known as "E-discharge," from

which a patient's medical records from their hospital stay could be transferred to entities such as

home health agencies, nursing homes, or durable medical equipment companies, as needed.

Johnston Aff. at ¶ 13; Thompson Aff. at ¶ 4.  Case management on the floor required regular

interaction patients to determine their needs.  Thompson Aff. at ¶ 4.  Once trained, CMs on the

floor were expected to manage all of the twenty or more patients on the hospital wing to which

they were assigned.  *Id.* at ¶ 5.

As she began to work with Plaintiff, Thompson observed that Plaintiff had difficulty in performing the duties of a CM on the floor.[5]  Thompson Aff. at ¶ 6.  Plaintiff required significant oversight and assistance.  *Id.* at ¶ 6.  She could not grasp or retain instructions from Thompson, which Thompson had to repeat multiple times.  Thompson Aff. at ¶ 6.  Thompson observed that Plaintiff was incapable of multi-tasking in performing the job, an ability which Thompson says was critical to performance of the job.  *Id.* at ¶ 6.  For example, Plaintiff could not retain the process by which a patient's medical records were transferred from Paragon to the E-discharge system, and Plaintiff required repeated re-instruction concerning this process.  *Id.* at ¶ 6.

Thompson reported these difficulties to Kelly Johnston.  Thompson Aff. at ¶ 8; Johnston Aff. at ¶ 13.  Because of Plaintiff's failure (as reported by Gloria Thompson) to retain and perform the job duties and obligations of a CM on the floor, Johnston decided to provide Plaintiff with another written PIP to notify Plaintiff of the problems in her job performance and steps necessary to correct them.  Plaintiff's depo, Exhibit 13;  Johnston Aff. at ¶ 14.  Johnston, Plaintiff, and Human Resources Supervisor, Denice Hux, met on or about July 21, 2015 to go over Plaintiff's new PIP with her.  Affidavit of Denice Hux (Exhibit G to motion) at ¶ 5; Plaintiff's depo at 131-133 and Exhibit 13 (July 21, 2015 PIP).[6]  During this meeting, Ms. Hux asked Plaintiff directly multiple times whether Plaintiff needed any reasonable accommodation in connection with her job as a CM on the floor.  Hux Aff, at ¶ 5.  Each time, Plaintiff responded

---

[5] Additional CM duties on the floor for each patient are described in Exhibit 11 to Plaintiff's deposition.  Plaintiff's depo., Ex. 11.

[6] The performance problems, needed corrections, and completion timetables for this PIP are noted in the PIP and will not be recited here.  *See* Plaintiff's depo., Ex. 13; Johnston Aff. at ¶ 14 and Exhibit 2.

that she did not seek or need any reasonable accommodation.  Hux Aff. at ¶ 5.[7]  Over the next

ten days, Thompson continued to monitor and assist Plaintiff in Plaintiff's efforts to perform the

job duties of a CM on the floor.  Thompson Aff. at ¶¶ 6-8.  However, Plaintiff exhibited the same

problems with retaining instructions; focus; multi-tasking; and taking initiative with patients,

physicians, nurses and the other stakeholders involved.  Thompson Aff. at ¶¶ 6-8.  According to

Thompson, Plaintiff was unable during this time period to perform and complete CM job

functions for even a single patient.  Thompson Aff. at ¶¶ 6-8.

On July 31, 2015, Plaintiff and Thompson met with Johnston to discuss Plaintiff's

progress and situation.  Plaintiff's depo. at 136-138.  Plaintiff agreed she was incapable of

performing case management duties on the floor.  Johnston Aff. at ¶ 16; Plaintiff's depo. at 136-

138 (Plaintiff concedes that she could not do the job as of July 31, 2015).  Because of Plaintiff's

demonstrated poor performance as a CM on the floor (after having failed to satisfactorily

perform as a CM in the ED), Johnston concluded that Plaintiff should be discharged for poor

performance.  Johnston Aff. at ¶ 17.  This decision was approved by Baptist's Human Resources

Department.  Johnston Aff. at ¶ 17.  Plaintiff was notified of her discharge.  Johnston Aff. at ¶

17.  Plaintiff's depo. at 135-136.

## III.    ARGUMENT

### A.    Plaintiff's claim for disability discrimination and failure to provide reasonable accommodation under ADA without merit.

To establish a claim for disability discrimination under the Americans with Disabilities

---

[7] Hux asked Plaintiff whether she needed a reasonable accommodation because Hux was aware that Plaintiff had taken medical leave from February 24 through March 3, 2015 for depression.  Hux Aff. at ¶ 4.  Nevertheless, Hux asked Plaintiff whether she needed a reasonable accommodation on July 21, 2015 because Plaintiff was continuing to have performance difficulties, and Hux wanted to determine from Plaintiff whether any reasonable accommodation was needed or would assist her as of that time in accordance with Baptist's ADA policy.  Hux Aff. at ¶ 5; Plaintiff's depo., Ex. 4 (p. 8).

Act ("ADA"), Plaintiff must establish that at the time of the alleged unlawful employment action: "(1)[she had] a 'disability;' (2) [she was] a 'qualified individual' for the job in question; and (3) an adverse employment decision was made because of [her] disability." *Burch v. City of Nacogdoches*, 174 F.3d 615, 619 (5th Cir. 1999). *See* also *McInnis v. Alamo Comm. College Dist.,* 207 F.3d 276, 279 (5th Cir. 2000). "To be a 'qualified individual,' the employee must be an 'individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires.'" *Toronka v. Continental Airlines,* 411 Fed. App'x 719, 725 (5th Cir. 2011); *see Bennett v. Calabrian Chemicals Corp.*, 324 F. Supp. 2d. 815, 828-29 (E.D. Tex. 2004) (determination of whether Plaintiff was a "qualified" individual with a disability must be made as of time of alleged adverse employment action).

If Plaintiff satisfies her *prima facie* burden, Baptist must then establish a legitimate, non-discriminatory justification for Plaintiff's discharge. *McInnis,* 207 F.3d at 279. If it does so, any presumption of discrimination created by Plaintiff's *prima facie* showing drops from the case, and the burden shifts back to Plaintiff to establish that Baptist's asserted reason for her discharge was a pretext for intentional disability discrimination. *Id.* In this regard, Baptist asserts that a but-for causation standard applies to Plaintiff's disability discrimination claim under ADA. *See* 42 U.S.C.§ 12112(a) (employing "on the basis of" causation language for ADA which is synonymous with "because of" language under Age Discrimination in Employment Act and "because" language for retaliation claims under Title VII). *See also Gross v. FBL Financial Services, Inc.,* 557 U.S. 167 (2009)(but-for standard applies to ADEA discrimination claims); *Univ. of Tex. Southwestern Med. Ctr. v. Nasser,* 133 S. Ct. 2517 (2013) (but-for causation applies to retaliation claims under Title VII); *Johnson v. Benton Cnty. Sch. Dist.*, 926 F. Supp. 2d

899, 904 (N.D. Miss. 2013) ("*Gross's* but for causation standard is applicable to plaintiff's ADA claims"). Based on ADA's causation language, Baptist submits that *Rizzo v. Children's World Learning Centers, Inc.*, 84 F.3d 758 (5th Cir. 1996) and *Pinkerton v. U.S. Dept. of Educ.,* 529 F.3d 278 (5th Cir. 2008) –both of which predate *Gross* and *Nasser* –are materially undermined by *Gross* and *Nasser* to the extent those cases applied a "mixed motive" standard under ADA.[8]

     1.   <u>Plaintiff cannot establish a *prima facie* case of disability discrimination.</u>

Plaintiff's Complaint asserts Plaintiff suffers from "major depression."  Complaint, ¶ 5. The Complaint does not articulate how or why this claimed condition limited or precluded Plaintiff from performing her job duties as a CM at Baptist.  It is undisputed that no restrictions concerning Plaintiff's ability to perform her specific case management job duties were communicated to Baptist by Plaintiff's physician at any time.  Hux Aff. at ¶ 4.  Plaintiff has designated no expert of any kind.

It is apparent from Plaintiff's discovery responses, however, that Plaintiff considered herself to be unable or unwilling to perform case management duties because of required patient and physician interaction and of what Plaintiff describes as the "intensity" of case management work.  Exhibit J, response interrogatory 11.  Plaintiff also identified in her deposition a list of several medications necessary for her condition which she says caused difficulty with her memory, focus, and attention span during her Baptist employment.  Plaintiff's depo. at 7-8, 47-55, 118-119 and Exhibit 3.[9]  In any event, Baptist assumes without conceding, *arguendo,* for this motion only that Plaintiff's claimed depression would constitute a disability within the meaning

---

[8] *Accord Palmqiust v. Shinseki,* 689 F.3d 66, 74 (1st. Cir. 2012) ("*Gross* is the beacon by which we must steer, and textual similarity…compels us to reach the same conclusion here."); *Lewis v. Humboldt Acquisition Corp., Inc.,* 681 F.3d 312, 321 (6th Cir. 2012) (applying "but for" causation to ADA claim in light of *Gross*); *Serwatka v. Rockwell Automation, Inc.,* 591 F.39 957, 962 (7th Cir. 2010).

[9] After leaving Baptist, Plaintiff applied for and received disability status and benefits from the Social Security Administration.  Plaintiff's depo. at 48-19 and Exhibit 2.

of ADA.

Even if Plaintiff had an ADA disability, the record establishes that Plaintiff could not perform the essential functions of either case management position she held (in the ED or on the floor), with or without a reasonable accommodation.  *See Burch,* 174 F.3d at 619 (claimant must show either that she could perform the essential functions of her position, or that reasonable accommodation of her disability would have enabled her to do so); *Appel v. Inspire Pharm., Inc.,* 428 Fed. App'x. 279, 284 (5th Cir. 2011) ("an employee who cannot perform essential job requirements, even with accommodation, is not a qualified person with a disability"); *Toronka,* 411 Fed.  App'x. at 725 (same).  The affidavits of Plaintiff's supervisor Kelly Johnston, her co-workers in the ED, her preceptor Gloria Thompson, and the contents of her two performance improvement plans and follow-up meetings demonstrate Plaintiff's inability to perform CM duties.  *See* Exhibits B-I to motion (detailing Plaintiff's performance deficiencies and related complaints and reports to management about them); Plaintiff's depo., Exhibits 10 and 13. Plaintiff concedes she was unable to perform the essential functions of her position as a CM in either the ED or on the floor.  Plaintiff's depo. at 103-104 and Ex. 10 (p. 2) (Plaintiff conceded that she was "not cut out for case management" in the ED); Plaintiff's depo. at 136-138 (conceding that she was unable to perform the case management position on the floor at the time of her discharge).  As noted, Plaintiff sought to exit her job as a CM in the ED because of required patient and physician interactions and the intensity of that work.  Plaintiff's depo., Ex. 10 (p.2); Exhibit J, response to interrogatory 11.

It is undisputed that regular and routine interaction with patients and their families, physicians, other nurses and hospital staff, and third parties (such as Medicaid, insurance companies, durable medical equipment venders, ambulance companies, and other such entities)

were a regular and essential function of Plaintiff's case management duties both in the ED and on the floor.  Johnston Aff. at ¶ 3.  Thompson Aff. at ¶ 4, 5.  Plaintiff's depo. at 58-59, 60-65. *See EEOC v. E. I. DuPont de Nemours & Co.,* 480 F.3d 724, 730 (5th Cir. 2007) (essential functions of job are the fundamental duties of the employment position at issue); *McDaniel v. Mississippi Baptist Medical Center,* 877 F. Supp. 321, 231 (S.D. Miss. 1995) (consideration shall be given to employer's judgment as to what functions of the job are essential); 42 U.S.C. §12111(8).  Plaintiff, by her own admission, either failed or was unable to perform these essential functions at the level required by Baptist.  Plaintiff's depo. at 103-104, 136-138.

Plaintiff was asked in discovery to identify all reasonable accommodations which she claims she should have been given by Baptist.  Exhibit J, responses to interrogatories 11 and 12. Plaintiff identified no reasonable accommodation concerning her specific work duties as a CM in either the ED or on the floor which would have enabled her to perform the essential functions of those positions, and of which she ever notified Baptist.  *See* Exhibit J, response to interrogatory 11 (only accommodation referenced is performing utilization review); 42 U.S.C. § 12112(a) (employer's obligation to make reasonable accommodation applies only to the <u>known</u> limitations of the employee).[10]  Plaintiff therefore cannot establish that she could perform her duties as a CM in the ED or on the floor, with or without a reasonable accommodation.

2.      <u>Plaintiff's reasonable accommodation claim with respect to utilization review is invalid</u>.

Plaintiff's sole contention regarding her reasonable accommodation claim is the assertion that she should have been allowed to perform utilization review duties.  Exhibit J, response to

---

[10] Denice Hux specifically asked Plaintiff on or about July 21, 2015 whether she needed any reasonable accommodation associated with her job as a CM on the floor.  She asked her multiple times.  Each time, Plaintiff responded that she did not seek or need a reasonable accommodation.  Hux Aff. at ¶ 5.

interrogatory 11.  Plaintiff claims she understood she was "offered" such a "position" by Kelly Johnston on June 18, 2015.  Plaintiff's depo. at 109.  Johnston does not agree that she offered Plaintiff a position in utilization review or that any such position existed.  Johnston asserts she told Plaintiff she would look into the possibility of whether Plaintiff could cease case management duties and perform only utilization review.  Johnston Aff. at ¶ 11.  This divergence in testimony does not reflect a material fact dispute for the following reasons.

After Johnston initially discussed a utilization review function with Plaintiff on June 18, 2015, Johnston spoke with Chief Nursing Officer, Bobbie Ware.  Ware advised Johnston that Baptist did not allow registered nurses to perform solely utilization review duties.  Johnston Aff. at ¶ 12.  Ware Aff. at ¶ 2.  Ware told Johnston that utilization review duties were limited by Baptist to being performed by licensed practical nurses.  Johnston Aff. at ¶ 12; Ware Aff. at ¶ 2. Registered nurses employed as CMs were expected to perform professional nursing functions related to discharge planning for patients.  Johnston Aff. at ¶ 12.  In fact, the only instances in which CMs have been permitted by Baptist to perform utilization review work is in situations where they perform such work in addition to case management duties.  Johnston Aff. at ¶ 20; Ware Aff. at ¶ 3.  Since 2009, to Bobbie Ware's knowledge, no registered nurse or CM has performed solely utilization review duties at Baptist.  Ware Aff. at ¶ 3.  Accordingly, on June 29, 2015, Johnston told Plaintiff that as a registered nurse CM, Plaintiff could not perform solely utilization review duties.  Johnston Aff. at ¶ 12; Plaintiff's depo. at 109-110.

At the end of the day, no position for a registered nurse performing solely utilization functions existed in June 2015 or at any other time.  In order to provide Plaintiff with a position of this kind, Baptist would have to have created a position which did not otherwise exist.  It is well settled that ADA does not require an employer to eliminate or modify essential job

15

requirements (such as the requirement that jobs consisting solely of utilization review be performed only by licensed practical nurses) or to "create" a job the claimant could perform but which does not otherwise exist. *Toronka,* 411 Fed. App'x. at 724; *Still v. Freeport-McMoran, Inc.,* 120 F.3d 492, 498 (5th Cir. 1997).

Regardless of what Johnston originally told Plaintiff on June 18, 2015, the undisputed fact remains that no position of this kind existed for a registered nurse or CM at Baptist, then or now. Baptist was not required to manufacture such a position for Plaintiff (or to waive the requirement that purely utilization review duties not be performed by a registered nurse) as a matter of law. Moreover, Plaintiff cannot establish that she could have performed utilization review work. While patient and physician interaction may have been reduced in utilization review, the same requirements for retaining and performing throughout the day intricate tasks and processes, proficiency in operating computer programs, attention to detail and related focus and multi-tasking with respect to numerous patients –as required for a CM – were also required in utilization review work. Ware Aff. at ¶ 6; Johnston Aff. at ¶ 21.

The record also demonstrates that Baptist engaged Plaintiff at multiple junctures in an interactive process to determine if a reasonable accommodation would enable Plaintiff to perform her job. Kelly Johnston did so on June 18, 2015 by first exploring the possibility of utilization review and then moving Plaintiff out of the ED to the floor when Plaintiff admitted to difficulty with relationships and interaction with co-workers in the ED. Denice Hux asked Plaintiff multiple times if Plaintiff needed a reasonable accommodation in her job on the floor and Plaintiff said she did not. Gloria Thompson asked Plaintiff if she could modify her medication schedule to help her performance and Plaintiff again said no. Throughout Plaintiff's employment, Baptist maintained a policy notifying employees of their right to seek a reasonable

16

accommodation under ADA.  Plaintiff's depo., Exhibit 4 (p. 8).  The fact that no reasonable accommodation could be achieved does not mean that the interactive process was not undertaken in good faith by Baptist.  *See Toronka,* 411 Fed. App'x at 726 (plaintiff must prove interactive process would have resulted in available, vacant position for which he was qualified).  *See also Picard v. St. Tammany Parish Hosp.,* 423 Fed. App'x 467, 470 (5th Cir. 2011) (interactive process is not an end in itself, but a means to attempt to forge a reasonable accommodation); employee must still prove the availability of a reasonable accommodation); *Cutrera v. Bd. of Sup. of La. State Univ.*, 429 F. 3d 108, 112 (5th Cir. 2005) (alleged failure to engage in interactive process not actionable where no reasonable accommodation was possible).

Plaintiff's failure to accommodate claim with respect to utilization review duties thus fails.  This claim fails whether it is considered as part of Plaintiff's *prima facie* case or as a stand-alone claim for disability discrimination based on alleged failure to reasonably accommodate.

3. Plaintiff cannot overcome Baptist's legitimate, non-discriminatory reason for her discharge.

Even if Plaintiff could somehow establish a *prima facie* case of discrimination (and she cannot), Baptist has amply demonstrated a legitimate, non-discriminatory justification for her discharge – her ongoing poor job performance.  *See* Exhibits B-I.  As shown, Plaintiff concedes she was unable to perform her duties as a CM in either the ED or on the floor.  Plaintiff's depo. at 103-104, 136-138.  In these circumstances, Plaintiff cannot establish that her claimed disability or impairment was the "but-for" cause of her discharge.  *See supra,* III. A. (p. 11 and note 8).  Plaintiff would have been fired for poor performance regardless of anything else.  Ware Aff. at ¶ 5.

17

Plaintiff's only arguments in support of her disability discrimination claim are: (1) that Johnston allegedly subjected her to "intense scrutiny and criticism" of her job performance, and (2) an inadmissible, hearsay comment Plaintiff attributes to a Social Worker in the ED.  Exhibit J, response to interrogatory numbers 9 and 10.  Baptist addresses each below.

Plaintiff's assertion that Johnston began to unnecessarily or unfairly criticize and scrutinize her work performance after Plaintiff's return from medical leave in March 2015 is entirely belied by the record.  Plaintiff's ongoing performance problems were made known to Johnston from the time Johnston became Plaintiff's supervisor in September 2014.  The complaints to Johnston about Plaintiff's performance were ongoing throughout Plaintiff's time in the ED, and were received from multiple ED workers, ED physicians, and ED managers.  Exhibits B-I.  Johnston herself directly observed and began to address Plaintiff's problems long before her medical leave.  Johnston Aff. at ¶ 6.  Plaintiff agrees that it was Johnston's job to correct her performance if it was deficient.  Plaintiff's depo. at 80-81.

Johnston initially attempted to remedy Plaintiff's performance problems by providing her with additional training concerning her case management duties in October 2014.  When the complaints about Plaintiff continued into 2015, Johnston had little choice but to formally address Plaintiff's performance, and she did so with a written PIP.  In circumstances where numerous people were complaining about Plaintiff's performance well before she ever took medical leave, and where Plaintiff herself admits she was incapable of performing her job duties as a CM, Plaintiff can hardly be heard to complain that Johnston's appropriate efforts to address her performance were somehow unfair or inappropriate.  Plaintiff has no viable evidence that Johnston's criticism of her job performance was unfounded or was based on any alleged disability discrimination.  This argument is without merit.

18

Plaintiff's hearsay-based contention that a Social Worker in the ED, Brandy Roby, allegedly overheard Johnston making a statement on May 14, 2015 that "they needed to get rid of Plaintiff as soon as possible because they couldn't have a depressed person with suicidal ideation working in the emergency room" is also unavailing.  This purported evidence is insufficient to overcome summary judgment for two reasons.  First, Plaintiff's testimony to this effect is inadmissible hearsay.  Baptist hereby objects to and moves to strike the statement for this reason.[11]  Second, Brandy Roby (now Brandy Roby Brown) has testified that she has no recollection of hearing or overhearing any such comment from Kelly Johnston or any other manager.  Affidavit of Brandy Roby Brown (Exhibit I to motion) at ¶ 7.  Plaintiff's reference in her discovery answer to inadmissible hearsay from Brandy Roby cannot be considered on summary judgment since the hearsay cannot be cured or offered in admissible form.  *See Lee v. Offshore Logistical Transport, LLC,* 859 F.3d 353, 355 (5th Cir. 2017) (inadmissible evidence on summary judgment may not be considered where it cannot be presented in a form that would be admissible); Rule 56(c)(2), FRCP.

B.     **Plaintiff's Complaint does not state a cognizable claim for disability-based harassment; in any event, such purported claim is without merit**.

The only legal count in the Complaint claims disability discrimination and failure to provide reasonable accommodation.  Complaint, ¶ 9.  No separate count for alleged disability-based harassment is pled.  The only Complaint reference to harassment states: "Plaintiff's supervisor singled Plaintiff out for harassment due to her depression.  Plaintiff's supervisor told other employees that she did not want a depressed person working in the Emergency

---

[11] Baptist files Plaintiff's response to interrogatory number 9 solely to inform the Court of the entire content of Plaintiff's allegations in support of her discrimination claim.  In doing so, Baptist hereby asserts an objection to Roby's hearsay contained within Plaintiff's interrogatory response and to Plaintiff's reliance on it.

Department."  Complaint, ¶ 7.  Even if this single paragraph of the Complaint could be construed as a separate claim for disability-based harassment under ADA, it falls woefully short of meeting the requirements of Rule 8, FRCP, for sufficient pleading of an ADA harassment claim and should be dismissed for this reason alone.[12]

Regardless, Plaintiff has no ADA harassment claim.  Although the single harassment sentence in the Complaint mentions Plaintiff's "supervisor," the claim, if any, is properly analyzed as a hostile work environment claim.  *See Giddens v. Community Education Centers, Inc.*, 540 Fed. App'x. 381, 387 (5th Cir. 2013) (*quid pro quo* harassment claim requires proof that harassment culminated in a tangible employment action against the complainant because of employee's rejection of or opposition to harassing behavior).[13]

To make a hostile work environment claim, Plaintiff must establish a *prima facie* case, demonstrating that: (1) she belongs to a protected class, (2) she was subject to unwelcome harassment; (3) the harassment was based on her disability; and (4) the harassment affected a term, condition, or privilege of employment.  *Aryain v. Walmart Stores* Tex. LP, 534 F.3d 473, 479 (5th Cir. 2008).  "To affect a term, condition, or privilege of employment, the harassment

---

[12] Federal pleading rules require that a civil complaint "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face."  *See Ibe v. Jones,* 836 F.3d 516, 524 (5th Cir. 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Such factual allegations must permit the reviewing court to "draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).  Mere "labels and conclusions" or a "formulaic recitation of the elements of a cause of action" will not suffice, nor will "naked assertion[s] which are 'devoid of 'further factual enhancement.'"  *Twombly*, 550 U.S. at 555; *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 557)).  Plaintiff's single reference to "harassment" plainly fails these requirements.

[13] Plaintiff's complaint does not allege any nexus between the alleged harassing behavior and her employment termination.  Complaint, ¶ 7.  Plaintiff cannot assert that she was discharged because she rejected or opposed claimed harassment by her supervisor, Kelly Johnston.  As demonstrated below, Plaintiff's sole harassment allegation is that she was told by another employee that Kelly Johnston allegedly made a statement to others about Plaintiff.  Plaintiff does not assert that Johnston ever made any statement directly to her.  Ex. J, response to interrogatory No. 9; Complaint, ¶ 7.  Plaintiff also concedes that she never made any complaint to anyone in human resources or management about anything while she was employed at Baptist.  Plaintiff's depo. at 152.  Accordingly, since Plaintiff never rejected or opposed harassing behavior, no claimed harassment can have impacted or influenced Baptist's decision to her discharge.  *Giddens,* 540 Fed. App'x at 387-88.

'must be sufficiently severe or pervasive to alter the conditions of [the victim's] employment and create an abusive working environment.'" *Id.* (quoting *Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 67 (1986)).  If Plaintiff establishes a *prima facie* case, Baptist must demonstrate that it exercised reasonable care to prevent and correct promptly any harassing behavior, and that Plaintiff unreasonably failed to take advantage of any preventative or corrective opportunities provided by Baptist or to otherwise avoid harm.  *Giddens,* 540 Fed. App'x. at 388-89.

       1.    <u>Plaintiff cannot establish a *prima facie* case of disability-based harassment.</u>

Plaintiff cannot show that alleged harassment affected a term, condition, or privilege of her employment.  She has no evidence that alleged harassing behavior was sufficiently severe or pervasive to alter the conditions of her work environment or create an abusive work environment.  *Aryain,* 534 F.3d at 479.  The sole basis for Plaintiff's harassment allegation is her contention that she was told that a co-worker, Brandy Roby, overheard Kelly Johnston stating "they needed to get rid of Plaintiff as soon as possible because they couldn't have a depressed person with suicidal ideation working in the emergency room."  Ex. J, response to interrogatory No. 9.  As shown above (pages 18-19), this evidence is inadmissible hearsay to which Baptist objects and which it moves to strike.  Even if this evidence were admissible, this single statement is alone insufficient to show a hostile working environment.  Plaintiff does not even claim that the statement was made directly to her.  She claims she heard about it after the fact.  Regardless, one alleged statement does not remotely approach the heavy burden of establishing conduct sufficiently severe or pervasive to establish a *prima facie* case of unlawful harassment.

"The Supreme Court has repeatedly stated that 'simple teasing, off hand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment.'"  *Hockman v. Westward Communications, LLC,* 407 F.3d

317, 328 (5th Cir. 2004) (quoting *Faragher v. City of Boca Raton,* 524 U.S. 775, 788 (1998)). To affect a term, condition, or privilege of employment, the harassment alleged must be sufficiently "severe or pervasive so as to alter the conditions of the employment and create an abusive working environment." *Stewart v. Miss. Transp. Commission,* 586 F.3d 321, 330 (5th Cir. 2009). The totality of the circumstances determines whether conduct is sufficiently severe or pervasive. *Id.* Factors relevant to that inquiry "include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.*

Even if it were admissible, the single alleged comment attributed to Kelly Johnston (and not even made to Plaintiff) is entirely insufficient to meet the foregoing standards for actionable harassment. Conduct far worse and more repetitive has been deemed insufficient to meet this standard. *See Moyer v. Jos. A. Bank Clothiers, Inc.,* 601 Fed. App'x 247 (5th Cir. 2015) (repetitive, extended use of graphic sexual commentary, chewing plaintiff out, and yelling at her for being late held not sufficiently severe or pervasive); *Hockman,* 407 F.3d at 328 (comments about employee's body, slapping plaintiff on the buttocks with a newspaper, grabbing or brushing against plaintiff's breasts and bottom, attempt to kiss plaintiff, sexual overtures and watching plaintiff held to be insufficient to constitute actionable harassment); *Shepard v. Comptroller of Public Accounts,* 168 F.3d 871, 873 (5th Cir. 1999) (comments to plaintiff about her anatomy, touching plaintiff on the arm several times, rubbing plaintiff's arm, and other suggestive commentary directed to plaintiff held insufficient to be severe or pervasive harassment). Plaintiff thus cannot establish that the subject single alleged comment about (not to) Plaintiff, even if made, constituted actionable disability-based harassment.

The assertion that Ms. Johnston subjected Plaintiff to intense scrutiny and criticism of her

work is both unsupported and insufficient to establish actionable harassment based on disability. A claimant's subjective believe that harassment is attributable to the claimant's protected status is insufficient to overcome summary judgment.  *See, e.g., Nichols v. Lewis Grosser,* 138 F.3d 563, 570 (5th Cir. 1998); *Little v. Republic Fin. Co.,* 924 F.2d 93, 96 (5th Cir. 1991).  Here, Plaintiff speculates that Kelly Johnston's legitimate efforts to correct her admittedly poor performance as a CM were somehow related to her claimed disability.  She has no admissible proof to support that belief.  Ex. J, response to interrogatory No. 9.  In light of the complaints about Plaintiff's performance to Johnston, Johnston's own observations concerning Plaintiff's poor performance, and Plaintiff's admission of poor performance, the only possible inference is that Johnston's critiques of Plaintiff's performance were a legitimate exercise of managerial responsibility by Johnston as Plaintiff's supervisor–particularly where those issues and Johnston's effort to address them began well before Plaintiff's medical leave.  Plaintiff concedes that Johnston's responsibilities included management of Plaintiff's performance as a CM. Plaintiff's depo. at 80-81.  Plaintiff cannot establish that Johnston's attempts to review and correct her performance were based on an alleged disability, or that any constituted severe or pervasive "harassment."

> 2.   Baptist exercised reasonable care to prevent and correct disability-based harassment, and Plaintiff unreasonably failed to utilize Baptist's published harassment complaint procedures.

It is undisputed that Baptist maintained and provided to Plaintiff its anti-harassment policy and complaint procedure (applicable to harassment based on disability) in 2013.  Hux Aff. at ¶ 3.  Plaintiff was thus aware that if she believed she was being subjected to disability-based harassment, Baptist policy required that she immediately notify Baptist.  Plaintiff's depo., Ex. 4 pp. 20-21.  Plaintiff concedes she never made any complaint to Baptist management or to the

Human Resources Department, at any time about alleged harassment.  Plaintiff's depo. at 152. Plaintiff's purported disability harassment claim thus fails for this additional reason.  *See Patton v. Jacobs Engineering Group, Inc.*, 863 F.3d 419, 427-428 (5th Cir. 2017) (hostile work environment claim failed where plaintiff did not comply with employer's reporting and complaint procedure); *Giddens*, 540 Fed. App'x at 388-89 (employer avoids liability for harassment by demonstrating that it exercised reasonable care to prevent and correct promptly any alleged harassing behavior, and that the employee unreasonably failed to take advantage of the employer's preventative or corrective opportunities or to otherwise avoid harm).

## IV.     CONCLUSION

For all of the above reasons, Baptist respectfully submits that its motion for summary judgment should be granted, and that Plaintiff's Complaint should be dismissed with prejudice.

**RESPECTFULLY SUBMITTED**, this the 12th day of October, 2017.

MISSISSIPPI BAPTIST HEALTH SYSTEMS, INC.


BY:     _/s Walter J. Brand_____
KENNETH E. MILAM, ESQ. (MS BAR #3261)
WALTER J. BRAND, ESQ. (MS BAR #4313)
WATKINS & EAGER PLLC
400 EAST CAPITOL STREET, SUITE 300
P.O. BOX 650
JACKSON, MISSISSIPPI 39205
TELEPHONE: 601-965-1900
FACSIMILE: 601-965-1901

COUNSEL FOR MISSISSIPPI BAPTIST HEALTH
SYSTEMS, INC.

24

<u>**CERTIFICATE OF SERVICE**</u>

I, **WALTER J. BRAND**, do hereby certify that on October 12, 2017, I electronically filed the foregoing pleading with the Clerk of the Court using the ECF system which sent notification of such filing to the following:

James M. Priest, Jr.
Gill Ladner & Priest, PLLC
344 Highway 51, Suite 200
Ridgeland, MS  39157
        **Attorney for Plaintiff**


/s/ Walter J. Brand_____
**WALTER J. BRAND**